SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-124

| | |
|---|---|
| | Opinion Delivered OCTOBER 1, 2014 |
| STUART BLAKE DEATON<br>APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. DR-12-306] |
| V. | |
| | HONORABLE HAMILTON H. SINGLETON, JUDGE |
| ALYSSA MORGAN<br>APPELLEE | AFFIRMED |

## DAVID M. GLOVER, Judge

Appellant, Stuart Deaton, and appellee, Alyssa Morgan, are the unmarried parents of a minor female child, M.D. Stuart appeals from the October 24, 2013 order granting custody of the child to Alyssa. He contends that the trial court erred 1) in considering evidence presented by Alyssa for any purpose other than Stuart's fitness to have custody, and 2) in placing custody with Alyssa. We affirm.

*Background*

On November 9, 2012, when M.D. was approximately four months old, Stuart filed a motion for ex parte temporary custody. He also filed a petition to establish paternity, which Alyssa acknowledged. At the December 12, 2012 hearing on Stuart's motion, Stuart appeared with his counsel. Alyssa appeared pro se, having never been served but waiving service of summons on the record. She also acknowledged that she and Stuart had reached a temporary accord, and she approved a temporary order (which was not actually entered until April 10,

2013) by which Stuart would have temporary custody of M.D. and Alyssa would have supervised visitation. The order provided that this "arrangement shall continue until this matter is further heard by the Court." On March 26, 2013, Alyssa's counsel entered his appearance. Following a hearing on April 10, 2013, the trial court entered its May 6, 2013 order, which established a visitation schedule for Alyssa, eliminated the requirement that visitation be supervised, provided that the temporary custody and visitation was without prejudice, and made clear that a full hearing on the merits would be set by the trial court to establish what was in the child's best interest and that an attorney ad litem would be appointed.

The full hearing on the merits took place August 2, 2013. The parties and M.D. were each represented by counsel at the hearing, and posthearing briefs were submitted. By order entered October 24, 2013, the trial court stated that "[t]his matter came on for hearing Friday, August 2, 2013, on the issue of the custody of [M.D.]," and determined that it was in the child's best interest for custody to be with Alyssa. Stuart was awarded reasonable visitation and ordered to pay child support and the balance of the appointed ad litem's fee.

In this order, the trial court further recounted the unusual procedural history of the case, noting that it had earlier placed temporary custody with Stuart "without prejudice" to be followed by a full hearing on the merits. The order then explained in part:

> 6. That on the 2nd day of August 2013, a full hearing on the merits was held. Petitioner appeared with his new/substituted attorney, Mr. Ronald Griggs. Respondent appeared with her attorney, Mr. Lloyd Smith and Ms. Amy Freedman appeared on behalf of the minor child, . . . , as the child's attorney ad litem.

SLIP OPINION

After petitioner rested his case in chief he moved to prohibit any witnesses who may be called by respondent to testify because there had been no pleadings seeking affirmative relief. This motion was denied by the Court with the comment that neither party had filed pleadings seeking affirmative relief.

. . . .

7. That the Court has reviewed the briefs submitted, its notes from the hearings and the docket entries. After a careful consideration of all the evidence and law, the Court agrees with the ad litem's description of this case as being "strange" procedurally. In fact, this case is a "train wreck" procedurally.

As the Court acknowledged following the full hearing on August 2, 2013, ". . . Court opines there is nothing which supports the Ex Parte Order." Accordingly, the Ex Parte Order is set aside and dismissed.

8. That if the Ex Parte Order is vacated then custody of this child would and should revert to the biological mother, ACA 9-10-113. However, because of procedural peculiarities of this case, coupled with the pleading deficiencies, the Court feels compelled to also address "the best interests" of this child before awarding custody.

The respondent mother's childhood and young adult history is sad and her experience tragic. As a mid-teen, she elected to place her firstborn for adoption because it was in her child's best interest to do so.

At still a young age, she had her second child, a daughter . . . born during her marriage to Dayberry. This is the same child that she has continued to raise throughout the life of this particular lawsuit. And, according to her in-laws with whom she lives, she has done an outstanding job of raising [the second child].

The evidence presented prior to the parties' separation establishes respondent as the primary care giver of [both children]. Both she and petitioner did some drugs occasionally, but that conduct is now behind them.

[The two little girls] need to be reunited as sisters.

9. That it is the Court's opinion that it would be in [the minor child's] best interest that her custody be restored to her mother, respondent.

SLIP OPINION

*Procedural argument*

For his first point of appeal, Stuart contends that the trial court erred in considering evidence presented by Alyssa for any purpose other than Stuart's fitness to have custody. That is, Stuart takes the position that the sole issue before the trial court should have been his request that the temporary-custody order be made permanent because Alyssa had filed no affirmative pleading "asking for any relief other than denying the allegations in the motion for temporary custody filed by [Stuart]." We disagree.

Arkansas Code Annotated section 9-10-113 addresses custody of a child born outside of marriage:

> 9-10-113. Custody of child born outside of marriage.
>
> (a) When a child is born to an unmarried woman, *legal custody of that child shall be in the woman* giving birth to the child until the child reaches eighteen (18) years of age *unless a court of competent jurisdiction enters an order placing the child in the custody of another party.*
>
> (b) A biological father, provided he has established paternity in a court of competent jurisdiction, may petition the circuit court in the county where the child resides for custody of the child.
>
> (c) The court may award custody to the biological father upon a showing that:
>
> (1) He is a fit parent to raise the child;
>
> (2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and
>
> (3) It is in the best interest of the child to award custody to the biological father.
>
> (d) When in the best interest of a child, visitation shall be awarded in a way that assures the frequent and continuing contact of the child with the mother and the biological father.

(Emphasis added.)

SLIP OPINION

The trial court described the procedural history of this case as a "train wreck," and we agree. But, even so, it can be fairly said that under the statute quoted above, custody of the child under the law was with Alyssa until a court of competent jurisdiction placed custody with another person. Even though the trial court granted temporary custody to Stuart, it was always clear that final action on the issue of custody was to follow, after a full hearing on the merits. When everyone gathered for the final hearing on August 2, 2013, it was clear, or should have been, that permanent custody was the issue to be decided.

Stuart presented his custody case, but then objected to Alyssa's being able to move forward with any evidence of her fitness to have custody of M.D. because she had not filed an affirmative pleading. In ruling on the objection, the trial court stated:

> Let me put it this way, there is no affirmative pleading period, by anybody. There is nothing driving this hearing today. There was nothing driving the hearing on April 10th. Everybody forgot to file a pleading. So that motion is overruled. Call your first.

In short, neither side filed appropriate pleadings. Nonetheless, custody of M.D. had been placed with Stuart only temporarily, and it was always clear that a final hearing on that issue would follow. We find no merit in Stuart's argument that the state of the pleadings barred Alyssa from presenting any evidence for any purpose other than to determine *his* fitness for custody. Stuart's reliance upon Arkansas Rules of Civil Procedure 8(a) (pleading claims for relief), and 15(b) (amendment of pleadings to conform to evidence presented at trial when issues are tried by express or implied consent), along with cases addressing those rules, is misplaced under the circumstances of this case and simply not convincing. There are two sides to a custody coin, and once Stuart put on his "custody" case, Alyssa was entitled to put on her full "custody" case, which rightly included evidence beyond Stuart's fitness.

SLIP OPINION

*Custody*

For his second point of appeal, Stuart contends that the trial court clearly erred in granting custody of M.D. to Alyssa. We disagree.

In reviewing child-custody cases, we consider the evidence de novo, but will not reverse a circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Smith v. Hudgins*, 2014 Ark. App. 150, 433 S.W.3d 265. We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses. *Id.* This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize, to the fullest extent, its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id.* A finding is clearly erroneous when we are left with a definite and firm conviction that the trial court made a mistake. *Sykes v. Warren*, 99 Ark. App. 210, 258 S.W.3d 788 (2007).

As quoted previously, Arkansas Code Annotated section 9-10-113 provides that a child born to unmarried parents shall be in the child's mother's custody unless a court of competent jurisdiction enters an order placing the child in the custody of another party. *Smith v. Hudgens, supra.* A biological father may petition the court for custody if he has established paternity in a court of competent jurisdiction. *Id.* Custody may be awarded to a biological father upon a showing that 1) he is a fit parent to raise the child, 2) he has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child, and 3) it is in the best interest of the child to award custody to the biological father. *Id.*

As noted by the trial court, neither party properly pled in this case. Stuart never truly petitioned the trial court for custody under section 9-10-113. Rather, he sought temporary custody and then in paragraph 7 of that petition, he included the following sentence: "Further, it is in the best interest of the parties' minor child that the plaintiff be granted full and permanent custody of the parties' minor child." As the trial court further noted in its order following the final hearing in August:

> 8. That if the Ex Parte Order is vacated then custody of this child would and should revert to the biological mother, ACA 9-10-113. However, because of procedural peculiarities of this case, coupled with the pleading deficiencies, the Court feels compelled to also address "the best interests" of this child before awarding custody.

The trial court set aside and dismissed the order that granted temporary custody to Stuart. In fact, at the end of the August 2013 hearing, arrangements were made for hair-follicle tests (which proved negative) and posthearing briefs were scheduled, but the trial court also commented, "I will tell you right now in my opinion that nothing, nothing, supported the Ex Parte Order, nothing. Had she [Alyssa] not caved on December 12, 2012, I doubt if we would be here today." In an abundance of caution, however, the trial court made a specific finding in its May 6, 2013 order that it was in the child's best interest for Alyssa to have custody. We find no clear error in that finding.

At the August 2013 hearing, both parties testified, along with six other witnesses, and several exhibits were introduced. Alyssa was the primary care giver for M.D. until Stuart assumed custody. Testimony was presented that Alyssa had lived in a stable home environment since the day after Thanksgiving 2012, and that she lived with her other daughter and that daughter's grandparents, the Dayberrys, who were Alyssa's in-laws at the

time. Alyssa acknowledged that she was separated from her husband, David Dayberry, and that she planned to divorce him. She remained close to her in-laws, however, who testified that Alyssa was doing an outstanding job of raising their granddaughter, that David had essentially abandoned the child and had no contact with her, that he was not welcome in their house, and that their granddaughter and M.D. played together and seemed to have bonded. The trial court stated in its letter opinion that the little girls needed to be reunited as sisters.

In addition, the trial court was presented with testimony that Alyssa had maintained employment during that time period, sometimes working two jobs; that she brought home approximately $825 a month, with bills amounting to $584 a month; that she worked from 5:50 a.m. until 1:50 p.m.; that her other daughter went to daycare; and that M.D. would also go to daycare. Photographs of the Dayberrys's house were introduced. There was testimony that Alyssa was welcome to stay there as long as she needed to do so and that she had her own private area for herself, the daughter living with her, and for M.D. if she were awarded custody. There was also testimony that Alyssa was a loving mother and that she responsibly fulfilled the child's needs, i.e., Alyssa did not rely upon the grandparents to care for her child, although that they did help in getting the child to daycare in the morning after Alyssa had left for work.

Giving due deference to the trial court's superior position to evaluate the testimony and determine M.D.'s best interest, we are not left with a definite and firm conviction that a mistake was made in awarding custody of M.D. to Alyssa.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Ronald L. Griggs*, for appellant.
*Lloyd H. Smith, Jr.*, for appellee.